**MORTGAGE RECOVERY LAW GROUP, LLP**
PAUL A. LEVIN (State Bar No. 229077)
LAUREN M. GIBBS (State Bar No. 251569)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone: (818) 630-7900 Facsimile: (818) 630-7920
e-mail: plevin@themrlg.com, lgibbs@themrlg.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
JOHN STUART TONKINSON (to seek admission pro hac vice)
3501 Fairfax Avenue
Arlington, VA 22226
Telephone: (214) 673-7549
e-mail: jtonkinson@fdic.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver
for Washington Mutual Bank

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>Plaintiff,<br><br>vs.<br><br>ARK-LA-TEX FINANCIAL SERVICES, LLC d/b/a BENCHMARK MORTGAGE, a Texas limited liability company,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

# INTRODUCTION

1. Pursuant to written agreements, defendant Ark-La-Tex Financial Services, LLC d/b/a Benchmark Mortgage ("Ark-La-Tex") brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). As part of their agreements, Ark-La-Tex promised to indemnify WaMu for any losses arising either directly or indirectly, or in any way as a result of its acts or omissions, including submission of any inaccurate or incomplete application or other documentation for loans it brokered.

2. After WaMu funded the loans from Ark-La-Tex, WaMu sold Ark-La-Tex-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least 72 mortgage loans brokered by Ark-La-Tex ("Ark-La-Tex Defective Loans").

3. Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R") incurred losses settling the Trustee's claims. FDIC-R's losses resulted from Ark-La-Tex's acts or omissions, including its provision of inaccurate or incomplete loan applications or other documentation prepared by or at the direction of Ark-La-Tex including, *inter alia*, Ark-La-Tex's submission of loan applications and supporting material that misrepresented such things as the borrowers' credit obligations, employment status, income, or occupancy status.

4. FDIC-R demanded that Ark-La-Tex honor its written contractual indemnification obligation. Because Ark-La-Tex has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

## PARTIES, JURISDICTION, AND VENUE

5. The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

6. Ark-La-Tex is a Texas limited liability company with its principal place of business in Plano, Texas, and is registered and licensed to do business in California.

7. This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8. Ark-La-Tex contractually agreed to venue in this district. *See, e.g.,* Ex. 1 [2004 Broker Agreement], ¶ 21. Venue is also proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district. Venue is also proper in this district because Ark-La-Tex resides in this district in that it is subject to the court's personal jurisdiction with respect to the action at issue.

# FACTUAL ALLEGATIONS

9. WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

10. On information and belief, Ark-La-Tex engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

**A. Ark-La-Tex's Contractual Obligations**

11. Ark-La-Tex and WaMu had a contractual business relationship, governed by mortgage broker agreements including the 2004 Broker Agreement ("2004 Agreement") and 2005 Mortgage Broker Agreement ("2005 Agreement") (collectively, the "Agreements") attached hereto as Exhibits 1 and 2 respectively.

12. Under the Agreements, Ark-La-Tex was responsible for, among other things, interacting directly with and interviewing the borrower, counseling and assisting the borrower in the financing process, collecting relevant information and documentation in support of the loan application, preparing the loan application and submission package, and submitting the completed loan package to WaMu. Ark-La-Tex agreed to only submit loan applications that met all applicable requirements established by WaMu.

13. Under the Agreements, Ark-La-Tex was compensated for any loans funded by WaMu.

14. Pursuant to the Agreements, Ark-La-Tex expressly agreed to indemnify WaMu as follows:

> [Ark-La-Tex] will indemnify, defend and hold [WaMu] … harmless *from any and all* costs, claims, charges, actions, causes of action, *losses* or liability arising either directly or indirectly, regardless of any indemnitee's negligence, by reason of [Ark-La-Tex]'s negligence, a breach of the terms or conditions of this Agreement, *or in any way as a*

*result of an inaccurate or incomplete application or other documentation prepared by or at the direction of [Ark-La-Tex].*
(2004 Agreement) (emphasis added).

[Ark-La-Tex] agrees to indemnify, hold harmless, and defend [WaMu], its directors, officers and employees, agents, successors and assigns [WaMu] *from and against any* and *all losses*, claims, demands, damages, expenses or costs (including, but not limited to, reasonable attorneys' fees and costs incurred by [WaMu], with or without suit) *which in any way arise out of or relate to an alleged act or omission of [Ark-La-Tex]* or any of its directors, officers, employees or agents *in connection with an Applicant, an Application Package, a Mortgage Loan, or this Agreement.*"
(2005 Agreement) (emphasis added).

### B. The Ark-La-Tex Defective Loans

15. As noted above and set forth in more detail below, the Trustee asserted claims against the FDIC-R based on WaMu's sale of defective loans into the RMBS Trusts, including the Ark-La-Tex Defective Loans. As a result, FDIC-R incurred losses in connection with the Ark-La-Tex Defective Loans.

16. Pursuant to the Agreement, Ark-La-Tex brokered the 72 Ark-La-Tex Defective Loans summarized on Exhibit 3 attached hereto.

17. The loan application materials for the 72 Ark-La-Tex Defective Loans were inaccurate and incomplete, and they contained misrepresentations and omissions, including but not limited to misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral. As a result, the Ark-La-Tex Defective Loans failed to meet all applicable requirements and terms or conditions of the Agreements.

18. As an example, the loan documents for borrower YF contained numerous deficiencies, inaccuracies and material misrepresentations. Ark-La-Tex prepared and submitted loan application documents for YF that materially overstated the borrower's monthly income and failed to disclose the borrower's indebtedness on another property. The application documents also failed to disclose

that Ark-La-Tex's loan officer, John Kiner via his entity "J&K Enterprise", received a $63,000 kickback from the YF loan proceeds.

19. As another example, Ark-La-Tex prepared and submitted loan application documents representing that borrower VL had self-employment income of $6,000 per month. Tax returns obtained after VL defaulted on the loan showed that he had no such income.

**C. WaMu Sale of the Ark-La-Tex Defective Loans to the RMBS Trusts**

20. After WaMu funded the Ark-La-Tex Defective Loans, WaMu sold each of them to the RMBS Trusts.

21. In connection with such sales, and in reliance on the materials, representations, obligations, and remedies Ark-La-Tex provided, WaMu provided similar representations, obligations, and remedies to the RMBS Trusts as those made by Ark-La-Tex regarding the quality and characteristics of the loans, the borrowers, and the collateral.

22. The RMBS Trusts suffered losses resulting from defective loans that WaMu sold to the RMBS Trusts, including the Ark-La-Tex Defective Loans.

**D. FDIC-R's Settlement with Trustee**

23. On December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu sold the RMBS Trusts defective loans. On August 26, 2009, the Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from defective loans that WaMu sold to the RMBS Trusts, including the Ark-La-Tex Defective Loans.

24. FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the Ark-La-Tex Defective Loans. Given Ark-La-Tex's role and conduct in connection with the Ark-La-Tex Defective Loans, including Ark-La-Tex's relationship to the borrowers and that the loan information, documentation,

and application packages were prepared, gathered, and submitted by Ark-La-Tex, the claims against FDIC-R and FDIC-R's liability exposure to the Trustee arose out of inaccurate or incomplete loan applications or other documents prepared by or at the direction of Ark-La-Tex.

25. FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

26. On June 30, 2017, the Superior Court of the State of California (Orange County) approved the Trustee's application to accept a settlement of its claims against the FDIC-R for the FDIC-R's payment of more than $3 billion, including claims arising out of or relating to the Ark-La-Tex Defective Loans. Settlement of the Trustee's claims for that court-approved amount was objectively reasonable. On September 8, 2017, FDIC-R issued a $3,006,929,660 Receivership Certificate in settlement of Trustee's claims, thereby suffering a loss under the Agreement's indemnification provision. FDIC-R's claims are timely because they are brought within six years of the date FDIC-R suffered a loss. 12 U.S.C. § 1821(d)(14).

**E. Ark-La-Tex's Breach of the Indemnification Obligations**

27. On June 23, 2021, FDIC-R sent a demand letter to Ark-La-Tex seeking indemnification for its losses arising out of Ark-La-Tex's acts and omissions in connection with the Ark-La-Tex Defective Loans. Ark-La-Tex has not honored its obligation to indemnify under the Agreements.

28. The Agreements provide that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees. In order to enforce Ark-La-Tex's obligations under the Agreements, FDIC-R has retained the firm of Mortgage Recovery Law Group, LLP and agreed to pay it reasonable attorneys' fees. In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

29. All conditions precedent to the relief sought in this action have been fulfilled.

# CLAIM FOR RELIEF

## (Contractual Indemnification)

30. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

31. The Agreements are valid and enforceable contracts.

32. Plaintiff substantially performed all its obligations under the Agreements.

33. In connection with settlement of the claims involving the Ark-La-Tex Defective Loans, FDIC-R incurred substantial losses and damages resulting from Ark-La-Tex's acts or omissions and the inaccurate or incomplete applications or other documentation for loans brokered by Ark-La-Tex.

34. FDIC-R is entitled to indemnification from Ark-La-Tex for the losses FDIC-R suffered settling the Trustee's claims.

35. Ark-La-Tex breached its obligation to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A. A judgment against Ark-La-Tex in an amount to be proven at trial for its breach of its indemnification obligation;

B. Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C. Reasonable attorneys' fees;

D. Costs and expenses; and

E. Any other relief as the Court deems just and proper.

DATED: August 10, 2022          MORTGAGE RECOVERY LAW GROUP, LLP

By:     /s/ Paul A. Levin
        Paul A. Levin
Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: August 10, 2022 | FEDERAL DEPOSIT INSURANCE CORPORATION |
| 3 | | |
| 4 | | |
| 5 | | By:       /s/ John Stuart Tonkinson |
| 6 | | John Stuart Tonkinson (to seek admission to pro hac vice) |
| 7 | | Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank |
| 8 | | |